# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

UNITED POWER TRADES
ORGANIZATION

Plaintiff,

   v.

DONALD J. TRUMP
in his official capacity as President of the
United States;

PETE HEGSETH
in his official capacity as Secretary of
Defense; and

LIEUTENANT GENERAL WILLIAM H.
GRAHAM, JR.
in his official capacity as Commanding
General of the U.S. Army Corps of Engineers;

   Defendants.

Case No. _____

## **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.    Federal civilian workers have had the legal right to collectively bargain with their government agency employers since the early 1960s. When Congress adopted the Civil Service

COMPLAINT - 1

Reform Act of 1978, Congress specifically found that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a). Congress codified an extension labor management relations framework for federal civil servants in Chapter 71 of Title 5 of the U.S. Code ("Chapter 71" or "FSLMRS").

2. Plaintiff United Power Trades Organization ("UPTO") is a labor organization whose members include hundreds of workers employed by the U.S. Army Corps of Engineers ("USACE") as electricians, mechanics, lock and dam operators, painters, welders, crane operators, and material handlers, none of whom are required to have a security clearance, a Direct Reporting Unit of the Department of the Army, within the Department of Defense. UPTO's bargaining unit has had continuous representation for purposes of collective bargaining for decades, across multiple presidential administrations (both Republican and Democratic), during both wartime and peacetime.

3. On March 27, 2025, President Trump issued Executive Order ("EO") 14251. Section 2 of EO 14251 excludes the entire Department of Defense from coverage under Chapter 71 on the claimed basis that the entire Department has "as a primary function intelligence, counterintelligence, investigative, or national security work" and that Chapter 71 "cannot be applied [to DOD] in a manner consistent with national security requirements and considerations." In this way, EO 14251 excluded all USACE employees from coverage under Chapter 71, thereby eliminating their right to engage in collective bargaining.

4. More than a year later, on April 9, 2026, Secretary of Defense Pete Hegseth issued a memorandum directing the termination of all collective bargaining agreements to which the Department of Defense is a party, with exceptions for collective bargaining agreements currently protected by Court-ordered injunctions.

COMPLAINT - 2

5. On April 16, 2026, Mark Morrissey, a Human Resource Specialist within the U.S. Army Corps of Engineers, sent a letter to UPTO informing them that the Collective Bargaining Agreement ("CBA") between UPTO and the Department of the Army was terminated effective immediately, that UPTO is no longer recognized as the exclusive representative of employees, and that all bargaining will immediately cease.

6. This lawsuit challenges President Trump's Executive Order 14251 and its implementation by USACE. As set forth herein, EO 14251 and USACE's implementation of EO 14251 by terminating the CBA with UPTO are *ultra vires* and unconstitutional under the First and Fifth Amendments. Accordingly, Plaintiff seeks an Order from this Court invalidating EO 14251 and enjoining Defendants from implementing it.

7. This lawsuit also challenges Defendants' unilateral termination of the CBA. As set forth herein, the termination of the contract was arbitrary and capricious, an abuse of discretion, and contrary to law under the Administrative Procedures Act. Accordingly, Plaintiff seeks an Order from this Court enjoining Defendants from terminating the CBA.

### JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201.

10. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §§ 1391(b)(2) and (e)(1). Defendants are United States agencies or officers sued in their official capacity. Plaintiff UPTO is a resident of this judicial district. A substantial part of the events or omissions giving rise to this Complaint occurred and continue to occur within the Seattle Division of the Western District where UPTO members have lost the statutory protections of the Federal Service Labor-Management Relations Statute and their negotiated collective bargaining agreement

COMPLAINT - 3

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

due to Defendants' unlawful actions.

## PARTIES

11.     Plaintiff United Power Trades Organization is an independent labor organization headquartered in Mead, Washington.

12.     UPTO represents approximately 545 federal civilian Wage Board employees who work for the U.S. Army Corps of Engineers in Washington, Oregon, Idaho, and Montana. UPTO has been representing federal employees employed by USACE, and collectively bargaining on their behalf, for 45 years. Notably, not a single UPTO bargaining unit member is required by the Defendants to maintain a security clearance.

13.     Specifically, UPTO represents electricians, mechanics, lock and dam operators, painters, welders, crane operators, and material handlers on USACE hydropower dam projects in Washington, Oregon, Idaho, and Montana.

14.     Wage Board employees, including those UPTO represents, are blue-collar employees who are paid by the hour, and whose wages are established by Federal Wage Surveys in the geographic region where the employees work.

15.     UPTO brings this action on behalf of itself as an organization and on behalf of its members.

16.     Defendant Donald J. Trump has, at all relevant times, been the President of the United States. President Trump is sued in his official capacity.

17.     Defendant Pete Hegseth has, at all relevant times, been the Secretary of Defense. Defendant Hegseth is sued in his official capacity.

18.     Defendant Lieutenant General William H. Graham, Jr., has, at all relevant times, been the 56th Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers.

COMPLAINT - 4

Defendant Graham, Jr. is sued in his official capacity.

## FACTUAL ALLEGATIONS

### Congress Has Expressly Determined Collective Bargaining in the Civil Service is in the Public Interest

19. The Federal Service Labor-Management Relations Statute (FSLMRS), set forth at Chapter 71 of the U.S. Code, was enacted in 1978 "to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b).

20. In enacting the FSLMRS, Congress provided that: "the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—(A) safeguards the public interest, (B) contributes to the effective conduct of public business, and (C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment." 5 U.S.C. § 7101(a)(1).

21. Congress further provided, in no uncertain terms, that "labor organizations and collective bargaining in the civil service are in the public interest." 5 U.S.C. § 7101(a)(2).

22. Accordingly, the FSLMRS sets forth a comprehensive framework governing collective bargaining in the federal civil service. For example, the FSLMRS guarantees federal employees the right to "form, join, or assist any labor organization, or to refrain from such activity: and "to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees." 5 U.S.C. § 7102. The FSLMRS also requires federal agency employers to negotiate in good faith with employees' chosen representatives (i.e., their authorized labor unions) regarding matters affecting employees' terms and conditions of employment. 5 U.S.C. § 7114.

COMPLAINT - 5

23. Congress specifically imposed certain statutory restrictions on collective bargaining in the federal sector as a part of the FSLMRS. For example, federal employees have no right to engage in strikes or work stoppages. 5 U.S.C. § 7311. The FSLMRS also limited the scope of any statutory collective bargaining by providing protections to the government of certain management rights, including the rights to "determine the mission, budget, organization, number of employees, and internal security practices of the agency," to "hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees," and to "assign work…make determinations with respect to contracting out…and determine the personnel by which agency operations shall be conducted." 5 U.S.C. § 7106(a).

**The FSLMRS Applies to All Federal Agencies, With Only Narrow Exceptions for Agencies or Subdivisions Thereof with the *Primary Function* of National Security or Intelligence**

24. The FSLMRS applies to all federal agencies, defined as "an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Publishing Office, and the Smithsonian Institution." However, Congress explicitly excluded certain federal agencies from Chapter 71's coverage, namely the Federal Bureau of Investigation, the Central Intelligence Agency, the National Security Agency, the United States Secret Service, and the United States Secret Service Uniformed Division. 5 U.S.C. § 7103(a)(3).

25. Congress also granted the President the limited authority to "issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that: (A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, *and* (B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security

COMPLAINT - 6

requirements and considerations." 5 U.S.C. § 7103(b)(1)(A)-(B) (emphasis added).

26. Decades of practice demonstrate that the 5 U.S.C. § 7103(b) exclusion is to be applied narrowly.

27. Indeed, in the 47 years since the enactment of the FSLMRS, Presidents have exercised their authority to exclude certain agencies from Chapter 71 coverage only on rare occasions, and only to target agencies with clear responsibility for sensitive intelligence and/or national security work and—for the most part—with no prior history of collective bargaining. *See, e.g.*, Exec. Order 12171, 44 Fed. Reg. 66565 (Nov. 19, 1979) (Exec. Order No. 12,338, 47 Fed. Reg. 1,369 (Jan. 11, 1982); Exec. Order No. 12,410, 48 Fed. Reg. 13,143 (March 28, 1983); Exec. Order No. 12,559, 51 Fed. Reg. 18,761 (May 20, 1986); Exec. Order No. 12,666, 4 Fed. Reg. 1,921 (Jan. 12, 1989); Exec. Order No. 12,671, 4 Fed. Reg. 11,157 (March 14, 1989); Exec. Order No. 12681, 54 Fed. Reg. 28,997 (July 6, 1989); Exec. Order No. 12,693, 54 Fed. Reg. 40,629 (Sept. 29, 1989); Exec. Order No. 13,039, 62 Fed. Reg. 12,529 (March 11, 1997); Exec. Order No. 13,252, 67 Fed. Reg 1,601 (Jan. 7, 2002); Exec. Order No. 13,381, 70 Fed. Reg. 37,953 (June 27, 2005); Exec. Order 13,480, 67 Fed. Reg. 1,601 (Nov. 26, 2008); Exec. Order No. 13,760, 82 Fed. Reg. 5,325 (Jan. 12, 2017); Exec. Order No. 13,869, 84 Fed. Reg. 18,125, (April 24, 2019).

28. The Federal Labor Relations Authority has cautioned—in the very decision cited by Executive Order 14251—that the exception should be construed narrowly to protect federal employees' "opportunity under the Statute to determine whether or not they wish to be represented . . . and of the opportunity to engage in collective bargaining with respect to conditions of employment," activities which Congress expressly determined "to be 'in the public interest.'" *Dep't of Energy and Nat'l Ass'n of Gov't Emps., Loc. R5-181*, 4 F.L.R.A. 644, 655 (Nov. 12, 1980) (quoting 5 U.S.C. § 7101(a)).

COMPLAINT - 7

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

29. No President has ever sought to exclude the U.S. Army Corps of Engineers from the protections of Chapter 71. Indeed, USACE has been collectively bargaining with UPTO local unions for approximately 45 years, including during many major national security events and wars, and at no time has such bargaining ever been questioned as inconsistent with national security. This is for the simple reason that national security is not the primary function of any UPTO bargaining unit employee; not a single UPTO bargaining unit member is required by the Defendant to maintain any form of national security clearance.

**President Trump Has Taken Extraordinary Steps to Strip Most Federal Employees of Collective Bargaining Rights Under the Pretext of National Security**

30. On March 27, 2025, President Trump issued Executive Order No. 14251, Exclusions from Federal Labor-Management Programs, 90 Fed. Reg. 14,553 (March 27, 2025) ("EO 14251"), thereby depriving most federal civil service workers of their rights under Chapter 71 by excluding them from its protections, on alleged national security grounds.

31. Despite the extreme overbreadth of EO 14251, including at least 16 different agencies and subdivisions and representing about 75% of the federal government's unionized workforce, *see AFL-CIO v. Donald J. Trump*, No: 1:25-cv-2445 (D.D.C. July 29, 2025), Dkt. 1 (Complaint ¶ 43), certain agencies and job positions were not excluded from coverage under the executive order. Most notably, despite the alleged need to create new, widespread exclusions on national security grounds, EO 14251 explicitly does not apply to law enforcement agencies. *See* The White House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements" (March 27, 2025), available at https://perma.cc/5M2GMUSH.

32. Included in the EO as excepted from FSLMRS coverage was the entire Department of Defense, which includes the U.S. Army Corps of Engineers, without regard for the actual

COMPLAINT - 8

functions or responsibilities of Department of Defense or USACE employees.

33. EO 14251 specifically delegated the authority to the Secretary of Defense to suspend the application of the EO, to any "subdivisions of the departments they supervise" and bring them under the coverage of the FSLMRS.

34. The Fact Sheet issued by the White House to accompany EO 14251 describes the purposes for which EO 14251 was issued, including that the President believes collective bargaining with federal employees permits "hostile Federal unions to obstruct agency management" because Agencies are bound by collective bargaining agreements and must bargain over any mid-term changes. The Fact Sheet further explains that "Certain Federal unions have declared war on President Trump's agenda," and that the President "refuses to let union obstruction interfere with his efforts to protect Americans and our national interests." Notably, the Fact Sheet provides that the President "supports constructive partnership who work with him; he will not tolerate mass obstruction[.]" *See* The White House, "Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements" (March 27, 2025), available at https://perma.cc/5M2GMUSH. In other words, the Fact Sheet transparently declares that the motivation behind the EO is to prevent federal employee unions from performing representative activities of any kind because the President believes their exercise of any such associational and statutory rights—and the unions' existence more broadly— is inherently "obstructive" and contrary to his agenda.

### UPTO Continued to Bargain and Exercise its First Amendment Rights Between March 27, 2025, and April 16, 2026

35. Shortly after the EO was issued, on UPTO's public website, UPTO posted a message about the EO, alerting members and warning that the EO "intended to strip all of us of our collective bargaining rights and essentially eliminate Federal Unions and the vital role they

COMPLAINT - 9

play in protecting workers in the workplace." *See* https://www.unitedpowertrades.org/ (posted March 30, 2025) (last accessed Jun. 12, 2026). This public post is still active and visible on UPTO's website.

36. This March 30, 2025, public website post also specified actions that UPTO is taking in response to the EO, including:

    a. Trying to coordinate and/or collaborate with other Federal Unions in fighting the EO;

    b. Reaching out to the agency to try and gather information concerning the impact and implementation of the EO;

    c. Determining what other methods exist for collecting dues from members in response to the elimination of automatic dues deduction;

    d. Determining what other services we will be able to offer if the EO is not defeated;

    e. Determining what we would need to do to realign our organizational structure in the future to maintain viability if the EO is not defeated. *See id.*

37. On April 9, 2025, the President of UPTO sent a letter to Defendant Graham regarding EO 14251, requesting that General Graham lobby for UPTO to retain their collective bargaining rights, and ask that the Secretary of Defense exclude the U.S. Army Corps of Engineers from inclusion in the EO.

38. In this April 9, 2025, letter, UPTO stressed that eliminating collective bargaining rights "will have negative impacts on safety, morale, training, and productivity."

39. On September 12, 2025, UPTO sent a follow up letter to Defendant Graham reiterating UPTO's concerns regarding EO 14251.

40. In the time since the EO was issued, up through April 16, 2026, Defendants and

COMPLAINT - 10

UPTO continued to operate under the CBA, conducting labor-management relations and other related business as usual with USACE management. Specifically, UPTO continued to exercise their collective bargaining rights under the FSLRMS, and USACE continued to adhere to the CBA in this time period, in at least the following ways:

    a. Until April 16, 2026, USACE continued to hold its regular, bi-weekly labor-management "check in" meetings with UPTO leadership. UPTO representatives were permitted to use, and approved for, official time to attend these meetings.

    b. USACE continued to provide responses to grievances that were filed after the EO was issued, including on April 28, 2025, November 21, 2025, and December 22, 2025.

    c. On April 24, 2025, USACE provided consent for UPTO to use the Commons building at the Chief Joseph Dam after hours to hold a UPTO meeting on April 30.

    d. On June 9, 2025, USACE and UPTO signed a settlement agreement regarding two grievances concerning payment and approval to attend a required training for bargaining unit employees, following extensive negotiations with USACE management during the time after the EO was issued.

    e. On July 23, 2025, Deputy Chief of the Northwest Division, Shawn Worthington, held a Joint Training Committee Meeting, with USACE management and UPTO leadership.

    f. In August of 2025, USACE reached out to the Union because an employee requested their representation for a removal proposal action.

    g. In December of 2025, UPTO and USACE settled an outstanding grievance relating to overtime pay, and USACE disbursed payments pursuant to the grievance

COMPLAINT - 11

settlement to affected employees in January of 2026.

h. In January of 2026, USACE and UPTO exchanged emails regarding a proposed change to the Cold Weather Arc Flash PPE policy.

i. On March 9, 2026, Human Resources Specialist Mark Morrissey provided UPTO with official notification of its intent to make changes to certain bargaining unit member positions, noting USACE's expectation that "there will be minimal impact on bargaining unit employees" and requesting contact with further questions.

j. On March 27, 2026, Gregory Jackson, Labor Employer Relations Specialist for USACE, emailed UPTO with an official notification of an updated policy and asked if the union had any questions or wanted to discuss.

k. On March 31, 2026, Human Resources Specialist Mark Morrissey provided official notification to UPTO regarding management's intent to make changes to the performance rating period for certain bargaining unit employees.

l. On April 9, 2026, Morrissey also provided official notification to UPTO of management's intent to make changes to the handling of Leave and Earnings Statements delivery, and specifically identified the names of impacted bargaining unit employees.

m. Up until the end of March 2026, USACE was approving official time requests by UPTO representatives.

n. Pursuant to the CBA, USACE provided UPTO office spaces with a phone and computer for union use, at each worksite where UPTO had members, along with a bulletin board to provide information to members. These spaces were in active use by UPTO until April 16, 2026.

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

41. On June 2, 2025, UPTO posted an update on its public website regarding the impact of EO 14251 on its members. In this update, among other things, UPTO reported it had received representations from management that "[t]here is still no change about how we are operating. We are still being told that nothing has changed, the CBA is still in full effect, and it is anticipated that it will continue until such time that all litigation is finalized."

**Termination of the Contract**

42. On April 9, 2026, Secretary Hegseth issued a Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency, and DOW Field Activity Directors, with the subject "Termination of Certain Collective Bargaining Agreements in Accordance with Executive Order 14251." https://media.defense.gov/2026/Apr/22/2003916726/-1/-1/1/TERMINATION-OF-CERTAIN-COLLECTIVE-BARGAINING-AGREEMENTS-IN-ACCORDANCE-WITH-EXECUTIVE-ORDER-14251-EXCLUSIONS-FROM-FEDERAL-LABOR-MANAGEMENT-RELATIONS-PROGRAMS.PDF.

43. The Memorandum directed the termination of all collective bargaining agreements to which the Department is a party and that are not currently subject to a court order enjoining implementation of the EO. The Memorandum stated that the action is, allegedly, "required to align agency operations with national security requirements as outlined in EO 14251." *Id.*

44. On April 16, 2026, Defendant Graham and USACE implemented the EO and Defendant Hegseth's Memorandum. That same day, UPTO received a Memorandum from Mark Morrissey, stating that effective immediately, the CBA between UPTO and the Department of the Army are terminated in accordance with EO 14251.

45. The Memorandum issued to UPTO stated that "all CBAs, memoranda of understanding, memoranda of agreement, past practices, and any other form of written or oral

COMPLAINT - 13

agreements between the parties are hereby terminated," and that the union is no longer recognized as an exclusive representative of employees, and bargaining will cease.

46. Neither Secretary Hegseth's Memorandum, nor Mark Morrisey's Memorandum, made a finding that USACE, or specifically the employees that UPTO represents, have the primary function of national security work, or that Chapter 71 cannot be applied to UPTO employees in a manner consistent with national security requirements and considerations.

47. Moreover, Secretary Hegseth failed to exercise his authority under the EO to suspend the application of the EO to UPTO employees, even though they do not have the primary function of performing national security work.

48. Indeed, the employees UPTO represents *do not* have the primary function of performing national security work. UPTO employees are blue collar workers in positions including electricians, mechanics, lock and dam operators, painters, welders, crane operators, and material handlers that are charged with maintaining, constructing, and operating the equipment and machinery that produces hydropower.

49. In short, UPTO employees are blue-collar civilian employees that do not hold security clearances.

50. According to the USACE Northwestern Division website, projects that UPTO employees work on are not military projects but are "Civil Works" projects that do not serve a national security function, let alone have national security as a primary function. Instead, these Civil Works projects have the purpose of providing "benefits for navigation, flood risk management, hydropower production, fish and wildlife, environmental stewardship, recreation, irrigation, and municipal water supply." *See* U.S. Army Corps of Engineers, Northwestern Division Website, https://www.nwd.usace.army.mil/missions/civil-works/ (last accessed June 8,

COMPLAINT - 14

2026).

51.     There have been no specific findings or assertions in support of the determination that Chapter 71 cannot be applied to UPTO employees in a manner consistent with national security.

52.     In addition, the Government has not moved to terminate the collective bargaining agreement between the Bonneville Power Administration, which is responsible for delivering hydropower across the Pacific Northwest, and the Columbia Basin Trades Council, which represents blue collar workers associated with a coalition of international labor organizations including IBEW. Significantly, members of the Columbia Basin Trades Council perform substantially similar work to the members of UPTO, at the same location. The Bonneville Power Administration is responsible for distributing power generated not only by the Bonneville Lock and Dam in Oregon, at which many UPTO members are employed, as well as 31 other hydroelectric dams including all of the Civil Works projects at which UPTO members are assigned.

**EO 14251 and The Termination of the Contract Has Caused and Will Continue
to Cause Irreparable Harm to Plaintiff and Its Members**

53.     UPTO has entered into a CBA with USACE and the Department of the Army. This CBA is a valid, bilateral contract that was entered into prior to the issuance of EO 14251 and had not yet expired at the time of the Defendants' unilateral termination.

54.     By excluding UPTO members at USACE from coverage under Chapter 71, the government has stripped numerous statutory rights from UPTO, including the right to be present at formal discussions about grievances or in disciplinary interviews, 5 U.S.C. § 7114(a)(2), and to negotiate with agencies to reach binding Collective Bargaining Agreements, *id.* § 7114(b). This greatly diminishes UPTO's bargaining power and ability to carry out its representative duties.

COMPLAINT - 15

55. The implementation of the EO and termination of the contract has also led UPTO to lose access to official time and to union offices to conduct union activities. This has further diminished UPTO's ability to carry out its representational duties.

56. Moreover, in implementing the EO and terminating the CBA, UPTO lost its rights to bargain over changes to working conditions. For example, on April 9, 2026, Mark Morrisey emailed about a change to the handling of Leave and Earnings Statements delivery. On March 31, 2026, Mark Morrisey emailed a courtesy notification about management's intent to change the rating period for employees. And on March 9, 2026, Mark Morrisey emailed a courtesy notification about possible changes to Position Sensitivity Designation of some UPTO positions. UPTO intended to bargain with Defendants over these changes but has been stripped of its ability to do so due to the Defendants' actions.

57. UPTO was harmed in its ability to carry out its representational duties, and UPTO's members were harmed, by the implementation of the EO and by the termination of UPTO's contract, as these actions removed UPTO's ability to negotiate over changes in terms and conditions of employment such as the changes to policies and practices described in Paragraph 40.

58. Further, the contract period for the CBA was set to expire in May of 2026, and UPTO planned on giving notice of their intent to bargain over a new contract. However, UPTO has been prohibited from doing so by the implementation of the EO and the cancellation of the CBA.

59. On May 26, 2026, UPTO posted on its public website that it hired a law firm and intended to file a lawsuit in federal court including "filing for an injunction to reinstate the contract and UPTO's rights under the FSLMRA." Then suddenly, on June 9, 2026, and after several months of inaction by USACE, USACE filed a petition before the Federal Labor Relations Authority to

COMPLAINT - 16

revoke UPTO's Certificate of Representation, allegedly "pursuant to the President's direction in EO 14251." However, the real reason for this sudden filing of a decertification petition was retaliation for UPTO's exercise of its Constitutional rights.

**EO 14251 Has Been Enjoined as Applied to Other USACE Employees**

60. On July 29, 2025, several labor unions, including AFL-CIO, the International Federation of Professional & Technical Engineers (IFPTE), and the American Federation of Teachers, brought a lawsuit challenging EO 14251. *See AFL-CIO v. Trump*, Case No. 1:25-cv-2445 (D.D.C.). IFPTE and the International Brotherhood of Electrical Workers ("IBEW") represent several thousand civilian employees who work at the Department of Defense, including within the U.S. Army Corps of Engineers.

61. On October 1, 2025, Judge Friedman granted Plaintiffs' Motion for a Preliminary Injunction in Case No. 1:25-cv-2445 ("IFPTE Injunction"), finding that Section 2 of the Executive Order is unlawful as applied to Plaintiffs' bargaining units.

62. With respect to the Department of Defense, including USACE, the IFPTE Injunction only covered the bargaining units that were Plaintiffs in the case, including numerous IFPTE local unions and IBEW Locals 1688, 2080, and 2219.

63. IBEW Locals 1688, 2080, and 2219 represent employees of USACE and are based out of the USACE Omaha, Nashville, and Little Rock and Forth Worth Districts, respectively.

64. IBEW Local 1688, 2080, and 2219 members perform substantially similar work as UPTO bargaining unit members.

## COUNT I

### *Ultra Vires Action (Against All Defendants)*

65. Plaintiff reasserts and incorporates by reference all allegations set forth in

COMPLAINT - 17

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

Paragraphs 1 through 64 as if fully set forth herein.

66. The President's authority to act "must stem from either an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). As such, Courts have authority to enjoin and declare unlawful official action that is ultra vires, i.e., outside the scope of the Government's authority.

67. Under 5 U.S.C. § 7103(b)(1), the President may exclude an "agency or subdivision" from the protections of Chapter 71 only if two conditions are met: (1) "the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work," *and* (2) "the provisions of [Chapter 71] cannot be applied to that agency or subdivision in a manner consistent with national security requirements or considerations."

68. Despite superficially parroting language from the statute, EO 14251 disregards the specific requirements of 5 U.S.C. § 7103(b) and exceeds the statutory authority granted to the President.

69. With respect to the second requirement of Section 7103(b) of the FSLMRS, it is clear that EO 14251 was not based on a determination that "the provisions of [Chapter 71]" cannot be applied to [USACE or the employees in the UPTO bargaining unit] in a manner consistent with national security requirements and considerations," as UPTO represents employees that do not work in national security; UPTO has been bargaining for decades and continually entered into collective bargaining contracts throughout that time, and has not experienced any "interference" with national security considerations or requirements.

70. Additionally, the second requirement of Section 7103(b) is plainly not met as applied to UPTO because a court has held that EO 14251 is unlawful as applied to IBEW Locals that perform the same work for USACE, as well as other unions representing employees at USACE

COMPLAINT - 18

and within the Department of Defense.

71. Because EO 14251 goes beyond the narrow authority granted to the President under Section 7103(b) and thereby impermissibly effectuates a partial repeal of Chapter 71, the EO 14251 is *ultra vires* and violates the Constitution's separation of executive from legislative powers.

72. Similarly, the actions of Defendant Graham in terminating the CBA and refusing to participate in the collective bargaining process are also *ultra vires*, as they rely on and enforce an illegally issued and invalid executive order.

73. Moreover, Chapter 71 exists to create a "statutory Federal labor-management program which cannot be universally altered by any President," 124 Cong. Rec. H9637 (daily ed. Sept. 13, 1978) (statement of Rep. Clay), and the purpose of Chapter 71 is to facilitate and strengthen collective bargaining in the federal sector, *see Bureau of Alcohol, Tobacco, and Firearms v. FLRA*, 464 U.S. 89, 107 (1983); 5 U.S.C. § 7101(a) (finding and codifying that collective bargaining is in the public interest). The President's attempts to unilaterally exclude the majority of the federal workforce from collective bargaining conflict with the statute.

## <u>COUNT II</u>

### *Retaliation in Violation of the First Amendment (Against All Defendants)*

74. Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 64 as if fully set forth herein.

75. The First Amendment to the U.S. Constitution guarantees citizens the rights to freedom of speech, association, and to petition the Government for redress of grievances. U.S. Const. amend. I.

76. The First Amendment protects the right to associate with others in pursuit of a wide variety of political, social, and economic ends. The Government may not punish public employees

COMPLAINT - 19

on the basis of their associations absent action that is narrowly tailored to serve a compelling state interest.

77.     EO 14251 was issued in retaliation for UPTO and other federal unions engaging in constitutionally protected First Amendment activity as described in Paragraphs 35-41, including but not limited to engaging in ongoing labor negotiations and labor-management meetings, utilizing official time, and filing and resolving grievances. EO 14251 aims to chill such protected speech and petitioning activity not just by Plaintiff, but by all federal unions. Indeed, the Fact Sheet accompanying EO 14251 transparently reveals that the very purpose of the EO is to prevent alleged "union obstruction" caused by federal labor unions exercising their First Amendment rights to collectively bargain.

78.     As described above in Paragraphs 35-41, UPTO has exercised its First Amendment rights through its speech about the issuance of the Executive Order, and its continuing and ongoing union activity and association, including but not limited to the participation in the grievance process and negotiating over terms and conditions of employment.

79.     Defendant Graham and USACE terminated the CBA to retaliate against UPTO for protected First Amendment activity. The termination, which undid years of negotiation and bargained for rights and protections, would chill an ordinary person from engaging in speech or union activity in opposition to the Trump Administration.

80.     Defendant Graham terminated the CBA to punish Plaintiffs' speech and expressive associations, which include the actions described in Paragraphs 35-41.

81.     The termination violates Plaintiffs' rights to expressive association. The termination impairs UPTO's ability to effectively advocate for the contractual rights of its represented employees. Defendants also eliminated any official time or physical space that UPTO

COMPLAINT - 20

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

members could use to coordinate union activities. And Defendants provide no compelling government interests narrowly tailored to justify these burdens.

82. The Termination, and USACE's filing of a decertification petition within days of learning that UPTO intended to file a lawsuit challenging the termination of their CBA (see Paragraph 41), also violates the First Amendment's right to petition. The right to petition clause protects the rights of individuals to appeal to courts and other forums established by the government. The Termination impairs Plaintiffs right to petition the government, including bargaining with USACE about working conditions, and participating in grievance procedures.

## COUNT III

### *Violation of the Fifth Amendment's Takings Clause (Against All Defendants)*

83. Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 64 as if fully set forth herein.

84. The Fifth Amendment to the U.S. Constitution protects against deprivations of property "without due process of law," and that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

85. Because collective bargaining agreements entered into pursuant to the FSLMRS are contracts that bind federal agencies and labor organizations representing the agencies' employees, such contracts are considered property protected by the Fifth Amendment's Takings Clause. *See Lynch v. United States*, 292 U.S. 571, 579 (1934).

86. The Due Process Clause of the Fifth Amendment also protects against the government's retroactive abrogation of its contracts absent exercise of "federal police power or some other paramount power." *Id.*

87. Plaintiff has entered into a binding, bilateral collective bargaining agreement with

COMPLAINT - 21

USACE. This collective bargaining agreement does not interfere in any way with national security, as evidenced by the fact that it was in effect prior to the issuance of EO 14251.

88. EO 14251, and the subsequent actions by Defendants Hegseth and Graham in implementing EO 14251 at USACE, seek to nullify existing collective bargaining agreements and extinguish vested rights under them, including those which predate EO 14251. Such actions deprive Plaintiff UPTO and its members of vested rights under its collective bargaining agreement and, thus, their constitutionally protected property interests in such collective bargaining agreement, without any rational justification or legitimate public purpose. Accordingly, they constitute unlawful takings in violation of the Fifth Amendment.

### COUNT IV

***Violation of the Fifth Amendment's Right to Procedural Due Process (Against All Defendants)***

89. Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 64 as if fully set forth herein.

90. The Fifth Amendment's protection against deprivations of property "without due process of law" requires, at a minimum, notice and an opportunity to be heard before the government may deprive a person of property.

91. "Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States. Rights against the United States arising out of a contract with it are protected by the Fifth Amendment." *Lynch*, 292 U.S. at 579.

92. EO 14251 and USACE's implementation of EO 14251 seek to retroactively nullify collective bargaining agreements, including the CBA negotiated and signed by Defendants and UPTO. These actions deprive Plaintiff and its members of their constitutionally protected property interests in collective bargaining agreements lawfully entered into with USACE, and they do so

COMPLAINT - 22

without having afforded Plaintiff any notice or opportunity to be heard. This violates the Fifth Amendment's guarantee of procedural due process. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

### COUNT V

### *Violation of the Administrative Procedures Act (Against Defendant Graham Only)*

93. Plaintiff reasserts and incorporates by reference all allegations set forth in Paragraphs 1 through 64 as if fully set forth herein.

94. Under the Administrative Procedures Act ("APA"), a reviewing court "shall . . . hold[] unlawful and set aside agency action" that is, *inter alia*, "arbitrary and capricious . . . or otherwise not in accordance with law," "contrary to a constitutional right," and "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A)-(C).

95. Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983).

96. "An agency may not . . . depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009). Instead, it must give a "reasoned explanation" for such departure and "show that there are good reasons for the new policy." *Id.* at 515–16.

97. On April 16, 2026, Defendant Graham implemented EO 14251 by terminating the Collective Bargaining Agreement, as described in Paragraphs 44-45. This is a final agency action

COMPLAINT - 23

that is reviewable under the Administrative Procedure Act.

98. Defendant Graham has no lawful basis for excluding Plaintiff from Chapter 71, nor for terminating the Collective Bargaining Agreement.

99. Despite USACE's and UPTO's fruitful, decades-long collective bargaining arrangement as well as court-ordered injunctions preventing the USACE from implementing the EO with respect to other USACE employees including those performing substantially similar work, Defendant Graham has provided no reasoned explanation for these actions, nor for why the subjects of these actions are inconsistent with national security requirements and considerations, or why USACE has a primary function of national security work.

100. Defendant Graham's actions violate well-established principles of law. For example, it is unlawful for USACE to "[c]eas[e] the processing of existing grievances filed under collective bargaining agreements" and "[w]ithdraw[] from any scheduled arbitrations"—as well as to "disregard[] any newly filed grievances," where those newly-filed grievances are based on "facts or occurrences that arose before [cancellation of the CBA]." *See Nolde Brothers, Inc. v. Local No. 358*, 430 U.S. 243, 245-48 (1977); *Litton Financial Printing v. NLRB*, 501 U.S. 190, 205-06 (1991).

101. Defendant Graham's actions violate Chapter 71 and the Constitution, and are otherwise unlawful, arbitrary and capricious, and outside of his authority.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a) A declaratory judgment that EO 14251, USACE's implementation of EO 14251, and Defendants' termination of the CBA are *ultra vires*, in violation of the First Amendment's protection of speech and petitioning activities, and in violation of the Fifth Amendment's

COMPLAINT - 24

McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, D.C. 20005
(202) 833-8855

protection against unlawful takings and its guarantee of substantive due process;

(b) A declaratory judgment that the actions taken by Defendant Graham to implement EO 14251 in terminating the CBA are in violation of the Administrative Procedures Act;

(c) An order preliminarily and permanently enjoining Defendants from implementing or otherwise giving effect to EO 14251 or the recission of the CBA between UPTO and USACE;

(d) An order granting Plaintiffs their attorneys' fees and costs; and

(e) An order granting such other relief as this Court may deem just and proper

June 16, 2026

Respectfully Submitted,

/s/ Alexander J. Skalbania
Alexander J. Skalbania (WA Bar #15412)
SKALBANIA & VINNEDGE
3600 15th Avenue W, Suite 1000
Seattle, WA 98119
Phone: (206) 799-6937
Email: askalbania@aol.com

/s/ Diana J. Nobile
Gregory K. McGillivary (motion for admission
    *pro hac vice* forthcoming)
Diana J. Nobile (motion for admission
    *pro hac vice* forthcoming)
Sarah M. Block (motion for admission
    *pro hac vice* forthcoming)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave. NW, Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
djn@mselaborlaw.com
smb@mselaborlaw.com